## Rowe v. Addison & al.

Surveyors of highways, and those acting under them, are not liable for incidental damages to land-owners and others, in making or repairing the roads in their districts, if, in so doing, they act with discretion, and in a suitable and proper manner. *Otherwise*, if their acts are wanton, malicious or improper.

Surveyors of highways are not authorized to make dams or embankments on the sides of roads, or bars across the same, so as to throw back upon adjoining owners the water that naturally flows into the highways; but in such cases it is their duty to make culverts or bridges, for it to pass across the roads, or to make channels or canals by the sides of the highways, so that it may pass off naturally, without injury.

Where a surveyor of highways made a substantial bar of stone and gravel across the road within his district, near the eastern terminus of the same, by which water, which in its natural flow would pass through his district, was thrown back into an adjoining district, and upon the premises of the plaintiff, situated in the latter district, — *held*, that the surveyor and those acting under him were liable for the damages thus occasioned to the plaintiff.

Case, for flowage. The action was referred to a commissioner, who made the following report: That the plaintiff's dwelling-house, mentioned in his declaration, was built between twenty-five and thirty years ago, and is now owned by the plaintiff and his father — the plaintiff owning the westerly half, and his father the easterly half; that the plaintiff's store was built between twelve and sixteen years ago; that the highway, running northerly and southerly by the eastern end of the plaintiff's house, to Wilmot Centre, and the road leading westerly in front of the plaintiff's house and store, towards New-London, were, at the time said house was erected, open and travelled roads, and used as such by the public; that the ground in front of the plaintiff's house and store, and between the house and store, and a part of that now covered by the store, was originally lower than it now is, and is now lower than most of the surrounding ground; and the water from the surrounding ground has always settled in there, and, after filling said low place, the surplus water has drained off around the south-easterly corner of the plaintiff's front yard to the highway to Wilmot-Centre,

sometimes running down towards the north on one side of the highway, sometimes on the other side, and sometimes in the travelled part of said highway ; and the water so running around the corner has frequently gullied and injured the highway, and rendered repairs of the same necessary ; and the surveyors of the highway in the district northerly of and commencing at the corner aforesaid, have several times formed a bar of raised earth across said highway, for the purpose of turning the water down by the northerly side of the highway leading easterly to Andover, but said bars have been either washed away or removed, and the water continued to run down the highway to Wilmot Centre, till the obstruction complained of in the plaintiff's declaration.

The defendant, Addison, was a surveyor of highways in the town of Wilmot for the year 1852. The southerly limit of his district was the corner before named, near the plaintiff's house. Swett, the other defendant, lived in said district, and in the list of taxes committed to Addison for collection was a tax against Swett.

The obstruction complained of in the plaintiff's declaration was a bar, composed of stones and earth, commencing near his front yard and extending easterly across the " highway to Wilmot-Centre," which raised the water in front of and upon the plaintiff's premises, in wet times, by preventing it from running down the said " highway to Wilmot-Centre," and keeping it dammed up till it rose high enough to run down in the ditch on the northerly side of the highway leading easterly to Andover, in which course the water from that place had not been accustomed to run before. Said raising of the water and turning the same occasioned inconvenience and injury to the plaintiff, and so impeded the travel over the road to New-London in front of the plaintiff's premises that an indictment was found against the town of Wilmot for the same.

Said bar or obstruction was within Addison's highway district, and was made by him and those acting under his orders, among whom was the defendant Swett, as a highway surveyor, for the

purpose of preventing the water, which collected in front of and upon the plaintiff's premises, from running down the said "highway to Wilmot-Centre," and to protect the said highway from being washed and gullied by the water so running.

The bar or raising of the road caused no impediment to the travel on either of the highways before mentioned, except that of causing the water to stand on the road in front of the plaintiff's premises, as above stated; but was an improvement of, and a protection to, the highway in Addison's district; and if he was only to look to the interest of his own highway district, it was a judicious and proper improvement, but if he was bound to consider the effect it would produce upon the premises of the plaintiff and upon the highway in front of said premises, or upon either, it was not a proper and judicious exercise of the discretion vested in him as surveyor.

At the time the bar or raising of the road was being made by Addison and those acting under him, the plaintiff was present and objected to the course they were taking; but Addison proceeded, under the supposition that he was doing what he had a legal right to do.

Whatever acts were done by the defendant Swett in relation to the matter, were done by him in working out his highway tax, under the direction of Addison, as surveyor as aforesaid. The ground near the plaintiff's house, and between his house and store, and under and in front of the store, has been raised by the plaintiff, or by persons under whom he holds title, so that there is not so large a hollow to contain the water collecting there as there was at the time the house and store were built, which tends to throw the water into the front yard of the house, and into the highway in front of the yard; that after the repairs of the highway by the defendants, as alleged in the plaintiff's declaration, the water at times flowed back into the walk, to the south door of the plaintiff's house, and leading from said door to the highway leading westerly to New-London, to the depth of from three to five inches, thereby rendering access to said door inconvenient. If, upon the facts reported, the plaintiff is

entitled to judgment, he is entitled to recover the sum of fifteen dollars as damages.

*W. W. Flanders*, for the plaintiff.

Were the defendants authorized, and did their duty require them, to do the injury complained of ? We say, in answer,

I. That the money laid out in making that bar was an unauthorized expenditure of the town funds. The powers and duties of surveyors are derived from and depend upon the language of the statutes. By chap. 57, sec. 1, Comp. Stat., towns are bound to keep their highways in good repair, suitable for the travel passing thereon, and for that purpose they are compelled to raise the necessary sum of money, and have a suitable number of surveyors chosen or appointed annually. Comp. Stat., chap. 59, secs. 1, 3. Surveyors are the agents of the town, the full extent of whose duty is to keep the highways in good repair, and suitable for the travel passing thereon. The acts of the defendants did not tend to fulfil this obligation of the town to the public. If one road was repaired, another was injured and put out of repair by the same act. Their acts, instead of relieving the town of its obligations, made it directly liable. In consequence of that act the town of Wilmot was indicted for not keeping its highways in suitable repair. The money or tax they expended was raised for the purpose of repairing highways and bridges. Comp. Stat., chap. 59, sec. 1. Repairing highways means " to replace or remake, to restore what had been impaired or injured." *Callender* v. *Marsh*, 1 Pick. 429. The direct object of the bar was to stop the water and keep it back on the plaintiff and the New-London road. The surveyor's warrant directed him to apply the taxes given him to the repair of highways in his district, and will not protect him or any one under him in doing this injury.

II. If this be a repairing of the highways, it was against the provision of chap. 59, sec. 16, Comp. Stat. The design of that statute is, as we understand it, to protect every citizen in the enjoyment of a free and unobstructed pass between his dwelling-

house and public highways next to it. The water standing in the plaintiff's walk, as the case finds, was a serious obstruction, and such as defendants were prohibited from making.

III. The public have only an easement — a right of passage in highways. *Makepeace* v. *Worden et al.*, 1 N. H. 16 ; *Baker* v. *Shepard*, 4 Foster 213. Surveyors may do whatever is necessary, in a proper manner, to secure the enjoyment of that public right. They are bound, in doing this, to exercise a sound discretion, and not act wantonly or arbitrarily. *Callender* v. *Marsh*, 1 Pick. 428 ; *Sutton* v. *Clark*, 6 Taunt. 29. If the public safety and convenience require the turning of water, the surveyor is bound to do it with as much care in relation to property bordering on the road, as is possible for him to use. Should he abuse his authority he would be answerable to the suffering party. *Callender* v. *Marsh*, 1 Pick. 428. He is bound to exercise his best skill and judgment, and would be also liable for an injury which might have been avoided by repairing the road in another way. *Sutton* v. *Clark*, 6 Taunton 42.

*Pike & Barnard*, for the defendants.

1. Addison, being a surveyor of highways, did no more than he had a legal right to do. He did nothing out of the limits of his highway ; nothing but what was necessary to be done for the protection of his highway ; nothing but what had been repeatedly done before by other surveyors. He only repaired his highway ; that is, restored what had been impaired or injured.

Towns are required to keep good and sufficient highways, and to raise money each year for that purpose. Comp. Stat. 149, sec. 1 ; 146, sec. 1 ; and are subject to indictment and fine for any neglect of their duty. Comp. Stat. 144, sec. 1. Surveyors are the officers of towns, to see to the proper performance of this important service, and are liable over to the town in case of any special damage to any person arising from any neglect of theirs. Comp. Stat. 149, sec. 2. Each surveyor, then, within the limits of his district, has full and entire jurisdiction. Highways, when rightfully laid out, or when dedicated to the public

by user, are to be considered as purchased by the public of him who owned the soil, and by that purchase the right is acquired of doing every thing with the soil over which the passage goes, that may render it safe and convenient. *Callender* v. *Marsh*, 1 Pick. 426, 432; *Governor* v. *Meredith*, 4 D. & E. 794; *Thurston* v. *Hancock*, 12 Mass. 220; *Parton* v. *Holland*, 17 Johns. 95.

2. But if it be admitted that Addison had not the right to do what he did, the defendants cannot be holden unless he acted knowingly and maliciously. We hold the law to be, that the surveyor of highways has, generally, the right to repair the road within the limits laid out for that purpose, as he thinks proper; and is not responsible for any injury which may be incidentally occasioned to the owners of adjoining lands, unless he knowingly and wilfully obstructs or impairs the same. *Callender* v. *Marsh*, 1 Pick. 418. A public officer, acting from a sense of duty, in a matter where he is required to exercise discretion, is not liable to an action for an error of judgment. *Kendall* v. *Stokes*, 3 Howard N. S. 87; *Haggett* v. *Bigley*, 6 Humphrey 236; Angel on Water Courses 102 3d Ed.; *Sutton* v. *Clarke*, 6 Taunt. 29. The commissioner finds in substance that Addison acted in good faith, and under the supposition that whatever he did he had a legal right to do.

3. If, as the plaintiff contends, the surveyor is the agent of the town, he cannot be held unless he has exceeded his authority, or acted wilfully in the execution of his warrant. *Gassett* v. *Andover*, 21 Vt. 341; *Palmer* v. *Carroll*, 4 Foster 314; *Armstrong* v. *Kendall*, 9 Mass. 522; Comp. Stat. 147, sec. 15.

4. The plaintiff has a full and complete remedy for any injury that may have been done him against the town. Comp. Stat. 136, sec. 18.

EASTMAN, J. The right acquired by the public in a highway legally established for the public use, is only that of an easement; a right of passage over the land. *Baker* v. *Shepard*, 4 Foster 208; *Copp* v. *Neal*, 7 N. H. 276; *State* v. *New-Boston*, 11 N. H. 409; *Makepeace* v. *Worden*, 1 N. H. 16; *Stack-*

*pole & als.* v. *Healey,* 16 Mass. 33 ; *Robbins* v. *Borman,* 1 Pick. 122 ; *Perley* v. *Chandler,* 6 Mass. 454. And when a highway is legally discontinued, the public right of passage ceases, the duty of the town to keep it in repair no longer exists, and the owner of the land has it again free from encumbrance. *Hampton* v. *Coffin,* 4 N. H. 518 ; *Cheshire Turnpike* v. *Stevens,* 10 N. H. 137 ; *State* v. *New-Boston,* 11 N. H. 407.

A highway may continue for a longer or shorter time, but so long as it exists, and the easement belongs to the public, so long have they the right to its control. This right consists in the power to make the road and to keep it in repair suitable for travel, and in its free use by the public for all proper purposes, until discontinued.

In making or repairing highways, however, nothing can be taken from the land over which they are laid, by the town authorities, for any purpose except the legitimate end of constructing the roads. Everything growing or standing upon the land, the trees, timber, &c., belongs to the owner ; and every thing that goes to form the land itself also belongs to him, except what is necessary to be actually used in the making or repairing of the highway. *Baker* v. *Shepard,* 4 Foster 208 ; *Makepeace* v. *Worden,* 1 N. H. 16 ; *Bullen* v. *Runnels,* 2 N. H. 261 ; *Adams* v. *Emerson,* 6 Pick. 57 ; 1 Rolles' Abr. 392 ; 1 Burr. 143.

By statute, surveyors of highways have power within their districts to remove any gravel, sand, rocks, or other material from the travelled part of any highway therein, " without damage or injury to the adjoining land," to any other part of the highways in their districts, for the purpose of repairing and grading the same ; but they are prohibited from making, for any purpose, an uncovered trench or ditch by the side of the travelled part of any highway next and opposite to any dwelling-house or yard situate thereon, and from obstructing in any way the passage to and from the same. Comp. Stat., chap. 59, sec. 16.

Upon the laying out of highways, compensation is awarded to the land owners for all such damages as may fairly result to

them by the making of the road in a suitable and proper manner; not only on account of the land actually taken, but on account of the injuries to their other lands and property, and the inconveniences to which they are subjected. And if the roads are made with discretion, and in a suitable and proper manner, surveyors and others who act under them are not liable. *Callender* v. *Marsh*, 1 Pick. 417; *Lebanon* v. *Olcott*, 1 N. H. 339; *Woods* v. *Nashua Man. Co.*, 4 N. H. 527; *Aldrich* v. *Cheshire Railroad*, 1 Foster 359; *Dearborn* v. *Boston, Concord & Montreal Railroad*, 4 Foster 179, 185; *Steele* v. *Western Inland Co.*, 2 Johns. 283; *Pritchard* v. *Atkinson*, 3 N. H. 335.

The converse of the proposition is of course true, and surveyors are liable in damages for any wanton, malicious or improper acts in making or repairing highways within their districts. The authorities already cited sustain this position.

From these principles it is apparent that surveyors of highways are not authorized to make embankments on the sides of roads, so as to throw back upon adjoining owners the water that naturally flows into the highways; but in such cases it is their duty to make culverts or bridges for it to pass across the roads, or to make channels or canals by the sides of the highways, so that it may flow off without injury. Were such embankments and dams to be made, they might in some instances entirely destroy the land of the adjoining owner, and the exercise of such a power in making or repairing roads must be regarded as unsuitable and improper, if not arbitrary. Land owners do not receive from the towns compensation for damages of this nature; they are not the proper subject of consideration by the commissioners or selectmen who lay out highways, for they can only award damages arising from the proper construction of the same.

If surveyors of highways have not the right to make embankments so as to throw water back from its natural flow upon adjoining owners, to their injury, much less have they the power to make bars and embankments to turn water upon other roads, or upon those whose lands do not adjoin their districts.

From the facts stated in this case, we take it that the natural flow of the water which fell in front of the plaintiff's house, or which settled in there, was down the highway leading to Wilmot Centre, and through the district of which the defendant, Addison, was surveyor. To stop this water he made a substantial bar across the road, which threw the water back from his district, in which it would naturally flow, into another district, and upon the plaintiff's premises, doing him an essential injury. The commissioner to whom this case was referred, has found that, if the surveyor was only to look to the interest of his own highway district, this was a judicious and proper improvement ; but if he was bound to consider the effect it would produce upon the premises of the plaintiff, and upon the highway in front of the premises, or upon either, it was not a proper and judicious exercise of the discretion vested in him as surveyor.

Now we think it quite manifest that he was bound to consider the effect which his acts would have, both upon the adjoining district and upon the premises of the plaintiff; each of which have been substantially injured by his doings — the town having been indicted in consequence of the water that was thrown into the road, and the plaintiff's house having been made difficult of access by the water's flowing to his door at a depth of from three to five inches. He had no right thus to stop or divert the water from its natural flow, but it was his duty, or that of the town, to have prepared some channel through which it might pass off, without injury, in its natural course. As well might he have taken stone from his district, which could not be conveniently disposed of there, and drawn them into the adjoining district or upon the plaintiff's premises. This might be a benefit to the district of which he was surveyor, but it would also be an unwarrantable infringement upon the rights of others, for which he would be answerable.

It is no sufficient answer for the defendant that the ground near the plaintiff's premises has been raised, so that there is not so large a hollow to contain the water collecting there as there was at the time the house was built. This filling in may in some

instances cause the water to run down the highway towards Wilmot Centre, when otherwise it would not, but there is nothing in the facts reported showing this to be the cause of the alleged injury, or that the natural current of the water has been changed by this raising of the land, or the quantity discharged materially increased. Nor do we discover any thing in the report of the commissioner from which it can be legitimately found that the damages reported by him were not the direct result of the improper and illegal action of the surveyor and those acting with him in making the bar, independent of any raising of the land near the plaintiff's house. The warrant from the selectmen could afford no protection, either to the surveyor or to those acting under him, in doing illegal acts. If the plaintiff has done any thing which he had not a right to do, he may be made answerable therefor in a proper proceeding; but being satisfied that nothing appears upon this report that can relieve the defendants in this suit, there must be

*Judgment for the plaintiff.*